JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

AARON D. WEGNER (CABN 243809)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6831
    Facsimile: (415) 436-6982
    E-Mail: aaron.wegner@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 09-0103 CRB |
| v. | UNITED STATES SENTENCING MEMORANDUM |
| ANTHONY JOHNSTON, | Date: July 21, 2010<br>Time: 2:15 p.m.<br>Court: Hon. Charles R. Breyer |
| Defendant. | |

    On September 23, 2009, the defendant pled guilty to Count One of the Indictment charging him with knowingly and intentionally conspiring to possess with intent to distribute and to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, and 50 grams or more of methamphetamine, in violation of 21 U.S.C. Sections 846 and 841(b)(1)(A). The defendant also pled guilty to Count Nine of the Indictment charging him with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. Section 922(g)(1). According to the terms of the plea agreement, the parties agreed that the defendant's Guidelines range is 262 to 327 months in prison. In addition, under the terms of the plea

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB     -1-

agreement, the parties agreed that the appropriate sentence in this case is between 262 and 168 months in prison.

On June 21, 2010, the government received the final Presentence Report ("PSR") in this matter. The PSR detailed the physical and emotional abuse suffered by the defendant as an adolescent, and as a result, recommended that the Court grant the defendant a downward variance to 168 months. However, as detailed below, the government does not agree with the PSR's recommended sentence and does not believe that a downward variance is warranted in this case. Rather, based on the defendant's ten prior felony convictions and the significant amount of drugs distributed by the defendant in this case, the government believes that a sentence of 262 months, which is within the applicable Guidelines range, is appropriate.

## **BACKGROUND**

The government's long term investigation into Rafael Franco Perez's drug organization began in the fall of 2006 and concluded with the arrest of nine individuals, including the defendant, on February 4, 2009. During the government's investigation, it became clear that the organization imported drugs into the United States through the Mexican border and distributed kilogram-quantities of controlled substances, in particular crystal methamphetamine and heroin, in and around the San Francisco Bay Area.

The defendant, nicknamed "Gangster," is a former Norteno gang member who distributed large of amounts of heroin and methamphetamine for the Perez organization between 2006 and 2008. For example, the defendant sold either heroin or methamphetamine to an undercover ATF agent ("the UC") in San Francisco on 19 occasions between November of 2006 and November 2008. During the course of these transactions, the defendant sold approximately 2,214 grams of heroin and 44.3 grams of actual methamphetamine, and in return, received $53,270 from the UC. In addition to the drug sales, on August 7, 2007, the defendant sold a firearm and ammunition to the UC for $400.

On February 4, 2009, the defendant was arrested in San Francisco and was taken into custody. The defendant has remained in continuous custody since he was arrested.

# LEGAL STANDARD

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct Guidelines range. *Id*.

Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). The Guidelines range will be the starting point and the initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the Guidelines range in mind throughout the process, allow the parties to argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a). *Id.*

If the Court imposes a sentence outside the Guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Id*. The Court should make an individualized determination based on the facts of each case. *Id.* The Court, however, is not required to raise every possible relevant issue sua sponte. *Id.*

# ARGUMENT

**A.     The Correct Guidelines Range Is 262 to 327 Months In Prison**

    1.     The Correct Guidelines Calculation Is Level 34

The parties agree with the Probation Office that the following Guidelines calculation is correct:

| Base offense level | USSG § 4B1.1(a) | 37 |
|---|---|---|
| Defendant accepted responsibility | USSG §3E1.1(a)+(b) | -3 |
| Total offense level | | 34 |

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB                              -3-

(PSR ¶¶ 49-50.)

### 2. The Defendant's Criminal History Category Is CHC VI

The government agrees with the Probation Office's calculation of the defendant's criminal history, resulting in a Criminal History Category of IV. (PSR ¶ 63.) However, given that the defendant is a Career Offender within the meaning of USSG § 4B1.1(a), a Criminal History Category of VI should be applied. *See* U.S.S.G. § 4B1.1(b).

### 3. The Correct Guidelines Range Is 262-327 Months In Prison

The Guidelines range provided for Offense Level 34 and Criminal History Category VI is 262 to 327 months in prison. *See* U.S.S.G., Sentencing Table. The sentencing range lies in Zone D of the Sentencing Table, and the sentence must therefore be served in prison. *Id*.

## B. Prison Sentence Of 262 Months Satisfies The 3553(a) Factors

Analysis of the Guidelines and § 3553(a) shows that 262 months in prison is a reasonable and appropriate sentence for this defendant.

### 1. 262 Months In Prison Is An Appropriate Sentence Considering The Nature And Circumstances Of The Offense, And The Defendant's History And Characteristics – § 3553(a)(1)

#### a. The Defendant's History And Characteristics Warrant A 262 Month Sentence

The defendant has not objected to the proposed offense level computations or the resulting advisory Guidelines range. However, the defendant seeks a downward variance from that range. The government disagrees. In considering the defendant's extensive criminal history, including ten prior felony convictions, along with his egregious conduct in this case, the government believes a sentence within the applicable Guidelines is warranted.

The physical and emotional abuse suffered by the defendant during his adolescence has been well documented to the Court. The government does not dispute that the acts perpetrated upon the defendant by his family, most particularly his step-father, were reprehensible and tragic. The government also agrees with the PSR that this abuse played a significant role in leading the defendant to a life of crime at an early age. The defendant's first criminal conviction, Disturbing

the Peace (misdemeanor), occurred when the defendant was only 18 years old. His first two felony convictions, both for Robbery, occurred when the defendant was only 20 years old.

As noted in the PSR, based in part of the abuses suffered by the defendant as child, he was able to serve his sentence for the Robbery convictions at the California Youth Authority and he was paroled in 1978. One short year later, the defendant was arrested and convicted of two more felonies - Grand Theft and Robbery. As a result, he was sentenced to 3 years and 8 months in prison. During the next seven years, the defendant accumulated six more arrests and six more criminal convictions. This criminal stretch culminated on March 6, 1987, when the defendant was convicted of four separate felony offenses (Burglary, Robbery of Inhabited Dwelling with Use of a Knife, False Imprisonment, and Grand Theft). As a result of these convictions, the defendant was sentenced to 13 years in prison.

In 1992, the defendant was paroled from prison. At that time, the defendant was 35 years old and was at a crossroads in his life.[1] He had completed a 13-year prison sentence and had a criminal record that included nine felony convictions. He was no longer a young man. If the defendant wanted to turn his life in a positive direction and break the pattern of criminal activity that had plagued him since his was 18 years old, he had that opportunity in 1992.

Unfortunately, the defendant chose the path of least resistance and continued to involve himself with drugs. The defendant was arrested in 1995 for Possession of Drug Paraphernalia and again in 2000 for Possession of Heroin/Sales of Heroin. These arrests did little to deter the defendant's criminal activity. In 2002, the defendant was arrested and ultimately convicted of Possession of Heroin for Sale. Despite suffering his tenth felony conviction, the defendant received a sentence of only one year in jail.

---

[1] In analyzing the defendant's lengthy criminal history, it is important for the Court to consider that the abuse suffered by the defendant ended in 1970 (at the age of 13) after he moved in with his biological father. Therefore, when he was released from prison in 1992, the defendant was 22 years removed from his childhood abuse.

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB                    -5-

As detailed in the PSR, the defendant started selling heroin to the UC in November of 2006. Over the course of the next two years, the defendant sold either heroin or methamphetamine to the UC on 19 occasions. During the majority of these transactions, the UC recorded the conversations between himself and the defendant. A review of these recordings shows that the defendant is a dangerous individual who has often resorted to violence. For example, on January 4, 2007, the defendant and the UC met to discuss the sale of ten ounces of heroin. During the conversation, the defendant told the UC that he "took the Hells Angels off for sixty thousand and eighteen pounds of crank." The defendant also told the UC that he was assaulted by Hells Angels and responded by killing two members of the organization. In a later conversation, on April 30, 2007, the defendant told the UC that he would murder Lisa (co-defendant Veronica Alvarado Gutierrez) and her baby if she ever disclosed his drug trafficking.

In addition, a particularly illustrative event occurred in early August 2007, when the UC asked the defendant about purchasing a firearm. After the defendant offered to loan the UC his .357 firearm, the UC informed the defendant that he might have "to get rid" of the gun after he used it. On August 6, 2007, the defendant offered to sell the .357 firearm to the UC. During this conversation, the defendant stated that the gun was "clean, very clean, it came from a cop." On August 7, 2007, the defendant met with the UC in San Francisco. During the meeting, the UC informed the defendant that he planned to use the .357 firearm to shoot at a car. Later in the meeting, the UC paid the defendant $400 for the .357 firearm and 11 rounds of ammunition. At the conclusion of the meeting, the defendant informed the UC that his drug supplier (co-defendant Veronica Alvarado Gutierrez) had over ten ounces of heroin prepared for the UC's alleged contacts in Seattle.

This transaction offers the Court important insight into the defendant's mentality during the course of the conspiracy charged in this case. Rather than showing an individual deserving of the Court's sympathy as portrayed in the PSR, a review of the conversations surrounding the sale of the .357 firearm reveals that the defendant is a dangerous individual with little to no respect

for the safety of the public. Even with full knowledge that the UC intended to use the firearm to shoot a vehicle, the defendant did not hesitate to sell the gun and ammunition to the defendant.[2]

This transaction also offers the Court perspective into the amount of narcotics the defendant could obtain. As the Court is well aware, ten ounces of heroin is a significant amount of narcotics, and not an amount a typical street-level dealer can obtain on one occasion. As later transactions prove, the defendant was not bluffing about his narcotics connections. For example, on February 8, 2008, the defendant sold 17 ounces of heroin to the UC for $8200. Moreover, on February 26, 2008, after the defendant left Gutierrez's home and supplied the UC with two ounces of methamphetamine, the defendant stated that "in [Gutierrez's] house right now, if they kicked down that f**king door, they would get maybe, maybe sh**, fifty thousand in cash and probably about four pounds of raw heroin and about two pounds of f**king crank."

As the Court examines the defendant's life since 1976, it is readily apparent that the vast majority of the defendant's life has been spent engaged in criminal activity or incarcerated. Since 2002, it is undisputed that the defendant's livelihood has been derived from one simple source – selling illegal drugs. A review of the defendant's record indicates that he meets both the statutory and common definitions of a "career offender." Despite this pattern of criminal behavior, the defendant urges the Court to grant him a downward variance. No such variance is warranted. While the childhood abuse suffered by the defendant was severe, he has had decades of substance abuse treatment for his addictions. The defendant has also had decades to turn away from criminal conduct and pursue legitimate employment. He has never seized this opportunity. Rather, as displayed during the course of the government's investigation, the defendant remains a brazen and unrepentant criminal who is a danger to the community.

---

[2] The defendant did not hesitate to sell his own gun to the UC because, as revealed by a later conversation, the defendant stated that he was seeking to obtain a smaller firearm. The defendant explained to the UC that "you can get a f**king bottle, you know, and stick it on the muzzle and it'll be almost no noise and you can take a motherf**ker out."

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB                    -7-

### 2. 262 Months In Prison Should Deter The Defendant From Further Illegal Activity and Protect the Public from Further Crimes– §3553(a)(2)(B)–(C)

The defendant stands before the Court having been convicted of eleven felony offenses. After suffering four felony convictions in 1987, the defendant was sentenced to 13 years in state prison. Despite this lengthy sentence, the defendant continued to engage in criminal activity. At this point, it seems as if the defendant is simply unable or unwilling to live a law abiding life. Accordingly, the government believes that PSR's recommended sentence of 14 years (168 months) is woefully inadequate to deter the defendant from committing future crimes. In the government's opinion, the defendant is the exactly the type of individual for whom the Career Offender Guidelines were established, and he should be sentenced accordingly. By imposing the 262 month prison term proposed here, the Court will address the seriousness of this offense, promote respect for the law, provide just punishment, and deter the defendant from future criminal conduct.

### CONCLUSION

Based on the foregoing, the government recommends a sentence of a term of imprisonment of 262 months; five years of supervised release (with conditions to be fixed by the Court); and a $100 special assessment.

DATED: July 14, 2010

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


        /s/
AARON D. WEGNER
Assistant United States Attorney

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB                -8-